Michael Zuckerman, on behalf of the Attorney General of New Jersey, with the Court's permission I'd like to request four minutes for rebuttal. Granted. Thank you, and may it please the Court. The District Court's opinion should be reversed for three minutes. Three independent reasons. First, there is no Article III standing or rightness, as exemplified by this Court's decision in Sherwin-Williams. Second, there is no private right of action, as Plaka makes explicit. And third, there is no preemption here, because the phrase applicable to the sale or marketing of a firearm does not impose some free-standing concreteness test. I welcome this Court's questions on any of those issues at any time, but because standing and rightness are jurisdictional, I'll start there. NSSF's claim reduces to the supposition that New Jersey will, one day, using Section 5835, decide to sue some industry member that is Plaka-protected, seek relief based on some downstream third-party bad act rather than the defendant's own misconduct, seek to rely on Plaka's predicate exception rather than any of its other five exceptions, such as negligent entrustment, base that reliance, in turn, on conduct that is tortiously unreasonable but does not violate any separate law, and do all of that without alleging a mens rea and theory of causation that even NSSF would accept as valid. The upshot of that heap of variables is what this Court held in Sherwin-Williams in the face of a comparably less speculative dispute. Sherwin-Williams involved some other counties that had sued a paint maker for having lead in its paint. And then as soon as they got notice that this county was hiring some lawyers, no lawsuit had been filed. It just charged into court. So this involves a new statute. We know what the statute says. The statute is here. And Sherwin-Williams also put some weight on the lawsuit there being for past conduct. We know, you know, that conduct is all done and we can just wait until they're sued over. It's not going to influence future behavior at all, whereas here it could. So why aren't those distinctions important? Your Honor, I think those distinctions don't change anything here because even though there's a statute, that presents itself in any number of cases where parties would like courts to act as kind of roving commissions, judging the validity of the law. And courts have repeatedly told us that that's not what Article III allows. So I'll give you an example where there was standing. In Susan B. Anthony's list, which they cite, it lays out the framework. You have to identify arguably prescribed conduct that you want to engage in. You don't have to have engaged in it, so you don't have to plead yourself into liability. You just have to say, this is what I'd like to do, and it's at least arguably prescribed. If you're right about that and there is really a substantial threat of enforcement, then you can invoke the Article III power. You're not disputing that selling guns is arguably a constitutional interest involved in selling guns? Prong one, no question. Selling guns is arguably affected with a constitutional interest. Your argument on prong two seems to say they basically have to admit they would do something that makes them liable, and we don't require people to plead themselves into liability here. Is there really a dispute here apart from credible threat of prosecution? Absolutely, Your Honor, because they have to identify something besides selling guns that they think is in tension with the statute. They could say, for example, we think that the idea that having to ask any questions at all of people who want to buy our guns is an unlawful incursion on our rights as business people. If that's the activity they wanted to engage in that conduct, if they said, we really want to do this, this is the thing we want to do, we think it violates your law, that would tee up a discrete particularized case or controversy where we could actually have a dispute about whether, A, if that did fall under our statute, which I think it probably would, then there's a real fight about whether or not that is something that we can prescribe, whether our statute can validly prescribe that. Here, the only activity they've put in, and of course it is their burden, they're the ones who came into court and sought a PI, their burden was to say this is the thing we want to do that we think would violate your statute, and if that's credible and if we would, in fact, enforce our statute against that, then there is, in fact, an Article III case or controversy. This happened in New Jersey bankers. This court recently issued its opinion. The parties actually agreed there was standing. The court obviously had to address it anyway. Isn't the thing they want to do is to engage in lawful commerce that your statute attempts to at least impair if not shut down? Not at all, Your Honor. Lawful commerce is completely fine under our statute. The core distinction in our statute, and of course this gets a little bit into the merits too, is between culpable misconduct, so either violating the law or doing something that is a tort, so culpable in a different way. The predicate exception clearly allows you to regulate things like straw purchasers and bad record keeping. That's right in the federal law, right? Correct, Your Honor. Is that what the state is attempting to do? I think because of the state's attempting to do that, I don't know why we're here. It's clearly allowed under federal law that you can police the industry to the extent that they are facilitating straw purchasers and botching the record keeping requirements. And also it doesn't protect people that don't, as we know, I think from the California case, it doesn't protect people who don't have federal firearms licenses. That's all correct, Your Honor. I agree with that. I also agree that I don't know exactly why we're here because there is no thing that they've said they think we want to do, or that they want to do, that we would enforce our law against. You haven't done anything. What's strange here is we're talking about hypotheticals. Our order on the state issue allowed you to go forward and do all kinds of regulation. The state, as far as I know, there's nothing in the record to indicate you've done anything. What have you done? Well, Your Honor, so the law was enacted in July of 2022. The state has not yet brought forward any actions. In a matter of such urgency, here we are almost a year later, you've done nothing? Well, Your Honor, it does, I mean, I can't speak to specifics of investigations. You know, fact-gathering and building cases takes time when you have entities that are engaged in culpable misconduct. We don't immediately, you don't get a cause of action and then immediately run out and file an enforcement action. And again, we were under an injunction for part of that time. There's been real question about what we could do with this statute. But I think as the court's questions make clear, this is coming up here in a very hypothetical posture. This isn't a situation where we've brought an enforcement action and that federal firearms licensee, FFL, was engaged. Let's say New Jersey FFL is engaged in a pattern of straw purchasing. We bring an action against them. They say we have a block of protection. That keys up a key, obviously. But, you know, pre-enforcement challenges have become common. Maybe they shouldn't be, but they are. And you formed a unit and you charged in and asked for a stay, they stress. So this is a new development. It's not like the law was sitting around for 30 years and then they tried to make a beef out of nothing. I mean, your client cares about this law and they care about this law. And so what makes this different from other pre-enforcement challenges? So, Your Honor, I think in most pre-enforcement challenges you have an actual, a party that is coming into court saying, this is the thing I want to do that is proscribed. In Susan B. Anthony's list, you have two organizations. They say, we want to make these statements about future political candidates. One of them had already made the statement, and the Ohio Election Commission had actually found probable cause to believe it had violated Ohio's election law. That itself was a tough case. The Sixth Circuit went the other way, but the Supreme Court reversed because they had actually come in and said, this is what we want to say. We have very good reason to believe the Ohio Election Commission will believe that it is a violation of the law because they already said it was probably a violation of the law. And that tees up an Article III case or controversy. I also just want to say, I think in response both to Judge Bevis and Judge Hardiman's questions, that the existence of an office, obviously, I don't think can prove anything because we have all sorts of offices, and every agency that enforces any law has offices, but it doesn't create a kind of roving license to come into court to challenge the abstract validity of every statute that any division could enforce. And, you know, in fact, I appreciate the question because I know they've suggested there's some inconsistency between our seeking an emergency stay and claiming that there's no credible threat of enforcement. We think that's completely consistent because we've never denied that if we found out that there was an FFL in, you know, Sayreville, New Jersey, I'm just picking a random place, that was engaged in a pattern of straw purchasing that was worrying us, we would absolutely want to take immediate action on that. To the extent we have it, that's a good thing. We're happy that that hasn't come to pass, but that just underscores that their coming into court to seek a preliminary injunction against a statute that's never been enforced against anyone is jumping the gun, especially, so to speak, especially when they haven't identified anything that they actually want to do that they think would be covered. So I think part of the tension for me here is that there's a bit of overlap between the jurisdictional inquiry and the merits because you keep saying that, you know, they haven't said what they want to do that would be prescribed. And what they've said is that the statute is so vague that there's no telling what might be prescribed by the statute in the eyes of the attorney general. So where, you know, they say report to the recklessness inquiry, and they say, so how are we supposed to figure that out without delving into the merits? So, Your Honor, if I could answer that, I guess, in two parts, because I want to pull apart two different things that they could be saying. One is their vagueness claim, which is they do have a vagueness claim. They think that the statute is difficult to comply with. That's analytically different from their claim that the statute is somehow preempted by PLCA. So their PLCA claim is especially unwieldy in this posture because PLCA preempts actions, not statutes. The idea is that we can't bring certain actions. It's not that the law can't exist on the books. It's that we can't bring those kinds of actions against certain kind of – Actions under your state statute. Well, right, under PLCA we can't bring actions under any statute that don't satisfy the terms of PLCA. We know that. That's common ground among the parties. Sure, right. So, right, for the preemption, let's talk about that alone, that claim alone. I mean, I think my understanding, and, of course, I expect counsel will correct me if I'm wrong, is I think part of the reason why this is preempted is that they don't really know how you're going to enforce it, and you may enforce it in ways that violate PLCA. And, in fact, it's phrased in a way that it's so amorphous that you indeed might do that, and they don't want to pay for the cost of defending against those actions. So, Your Honor, I think that that line of logic actually shows up in a lot of challenges from parties that would like to invoke the judicial power. I mean, this court, it's not cited in our briefs. We were just looking through opinions. This court receives these kinds of claims. There's a claim called, it's a case called Vinida versus Pennsylvania, V-O-N-E-I-D-A, where the party wanted to say that Pennsylvania's illegal transfer of firearms law was vague. And the court, in an unpublished decision, had no trouble saying, there's no Article III standing there because you don't have a plan to engage in an illegal transfer. There was something in the past where, with the plaintiff's son, the court had no trouble seeing that that wasn't simply enough to invoke power, even though it might be unclear on the margins when that law could or couldn't be enforced against the litigant. Now, Mr. Vinida was a pro se litigant. Here they have some of the best, most talented lawyers in the country. But the rules are the same for everybody. You have to say what gets you into court. And if you don't, it's just an abstract inquiry. There are lots of laws, of course, that people might want to get these kinds of advisory opinions on. I mean, I think Pennsylvania, we cite Pennsylvania's child endangerment statute. It says that parents, I'm paraphrasing, can't unreasonably endanger the health and welfare of their children and violate a duty of care. There might be lots of parents. I mean, I'm a parent. My wife's family is from Fayette County, Pennsylvania. I don't think anybody would say I have an Article III claim to come into court just because I think, if I did, that one day this law could be enforced in an unduly vague manner against me because I go to Pennsylvania sometimes and have a child. I don't know if others want to talk more about standing. Happy to. If not, I do want to make sure there's time for you to discuss the cause of action issue here. Section 1983, you're not claiming that there is a cause of – I don't understand NSF to claim that there's a cause of action in this law. The focus of the argument is does Section 1983 allow them not just to enforce the First and Second Amendments, clearly they have cause of action of that, but to also enforce this preemption claim. So how should we read the federal law, PLACA? Should we read it as creating an individual right or maybe an immunity? Because it speaks of enforcing immunities. Is this the kind of immunity that is enforceable through 1983?  I think the question of whether it's an immunity is also a red herring. PLACA says in its text – this is rare – no provision of this chapter, the Act and the original public law chapters, shall be construed to create a public or private cause of action or remedy. That is the kind of language that expressly forecloses using Section 1983 or any other remedial provision to get into court. It's an affirmative defense. It's only a defense. So the way the PLACA is written is that if you're in the business of manufacturing, marketing, or selling firearms, your only move is to wait until a state like New Jersey makes an affirmative move and then you come forward with a defense. It's that simple. That's the way you look at it. I think it is that simple based on the words that Congress wrote, and I don't just mean that provision, although that provision is enough because it's actually rare that Congress comes out and says, we're not giving you a private right of action to enforce via anything. Section 1983 is the most common vehicle, obviously. But the structure reinforces that because it talks about specific kinds of actions that have been brought. So it's not – and then you do this kind of analysis of the pleading to see whether it falls into or out of the terms of PLACA. Again, I went through those five different steps at the beginning in my opening that you have to assess for every action to see whether you're even talking about a predicate exception type of PLACA suit that would be prescribed. That's just not the kind of inquiry that makes sense if you're trying to give someone a sword to go into court to strike down a statute. That's a classic shield. The PLACA also says shall not be brought. I think that's the language, right? So shall not be brought sounds a little stronger than a defense, right? Because a defense presupposes that an action is brought. That's why you instantiated defense in the statute is anticipating actions will be brought. And here the statute says the action shall not be brought. That's right, Your Honor. I think the remedy for when that happens is that the action gets immediately dismissed. And, of course, this gets into irreparable harm too, but they've said several times or at least they've suggested that just the act of being served with a complaint somehow damages them. But we have parties that have affirmative defenses all the time. And the state has sovereign immunity. And we would never say that we've been – that effectively says an action for damages against us shall not be brought. But sovereign immunity hurts you because unlike Sherwin-Williams, if the counties had done something wrong in that case against Sherwin-Williams,  here the manufacturers or the trade association in this case, they run up against your sovereign immunity. So it's not much of a remedy. They don't have a remedy if you do something that's a foul of PLCA. Which gets you back to the highly speculative nature of the idea that we're going to do something that runs afoul of PLCA, right? They haven't said – they haven't identified anything that they want to do that they have a right to do under PLCA that they think is covered by our law. So you're back in a situation where you're just – All right. So does that mean that maybe they do have standing in a different case if they were more forthcoming with what they want to do and what's put at risk? But you're saying because they haven't carried that – they almost haven't carried a burden of establishing standing? That's the thrust of your argument? I'm saying they never have standing. It's just on these facts they don't have standing. Thank you for that question, Your Honor. Yes, that is correct. Our argument is not now because they haven't said enough. It was their burden. They haven't put it in. Our argument is not not ever on Article III. They could, we assume, establish Article III. Our jurisdiction obviously would preserve the right to challenge it if we didn't think they carried the burden. But our argument is not that they can't possibly establish it. It's just all they've said is we sell guns, and that is not arguably prescribed by our statute. Let's hear a little bit about the merits on preemption. You know, there are two parts of this law that are troubling. One is the requirement that someone knowingly violate the state law. You know, it's not really that clear that there's enough knowledge baked in to put them on notice. And then secondly, there's the proximate cause test, where it seems like New Jersey is trying to undo federal law saying you're not going to be liable for some criminal's independent actions. So why, if we think that there's a cause of action here, why shouldn't we find that, you know, those two aspects at least are preempted of your law? So, Your Honor, if I could take one step back just to make sure I'm understanding your question and answering it in the right way. So I think our law obviously does three things. It has the unlawful prong. That creates a cause of action for things that I don't take into challenge. But the unreasonable prong is in dispute here, right? How are they going to knowingly violate that if you're basically trying to recreate a fuzzy tort standard that they might argue is the kind of thing that PLACA was designed to preempt? There were public nuisance suits, as a matter of historical record. PLACA was paused. They didn't want these states having these public nuisance actions. And you're just recreating. And the preamble to your bill says we're disappointed that PLACA just got passed. So, Your Honor, let me first talk about can you knowingly violate a reasonableness provision. And the answer is yes. We cite plenty of examples of that. This court, and I think it's called Hernandez-Cruz, talking about Pennsylvania's child endangerment statute, talks about this exact situation where there's a knowing mens rea applied to a standard of reasonableness. That shows up in disorderly conduct laws. That shows up in ERISA. It shows up in all sorts of contexts. So to the extent that there's some sort of vagueness challenge there, that I think is really their vagueness claim. If it's rare to knowingly violate a reasonableness provision, that just means our law doesn't cover that much, I guess. It doesn't mean that there's some – it's either sourced in their vagueness claim or it's nothing. On our legislature's preparatory statements about PLACA, I think those can't obviously alter the operative clauses. Our legislature also could have said in its preparatory clauses, we think PLACA is the greatest law ever. I don't think that they would not be here because they'd appreciate that we complimented PLACA. I think the legislature can say it doesn't like PLACA and then write a law that complies with PLACA if that's what it wants to do. I do want to explain, though, why the legislature's operative clauses respect the line that PLACA drew. That line was between culpable misconduct and what was really, in the pre-PLACA era, these – they were called public nuisance suits, but they really amounted to vicarious liability, strict liability kind of suits, where the idea is you sell guns, something bad happens, therefore you should pay. And PLACA came in to say enough of that. It was getting some traction in the Eastern District of New York with one particular district judge. This court also had a few cases like that in Camden that sort of flood the market theory that just because you produce a lot of this good, therefore the fact that these bad things happen somehow should – you should be the ones who have to pay for the fact that we have higher public safety expenses. Those kinds of theories were what PLACA was closing the door on. Well, but also this law changes the definition of proximate cause in a way that seems to be inconsistent with PLACA. And also this law purports to make the manufacturers and the other entities liable even if there's an intervening criminal act, right? Your Honor, I don't think it does. I think it codifies a known principle of proximate cause in tort law, which is that foreseeable intervening actions do not absolve you of liability. I mean, it's foreseeable that there would be crime, right? I mean, go outside. But that's why – but the intervening cause can't be that attenuated. I think we – this court obviously is interpreting a New Jersey statute. It has to make an eerie guess, effectively, about what – how New Jersey courts would understand Section 35E. I don't think they would read it to be any different from just codifying what courts have already said, which is if the bar gives – overserves the tavern – you know, the person in the bar, and the person in the bar goes out and crashes into someone, that doesn't absolve the tavernkeeper of liability. That's the kind of principle that I think 35E is making short. Yeah, but the Dram Shop Act cases, they require that the person that serves the person should reasonably know the person's intoxicated. I mean, should a car dealer know that the person to whom you're selling the car is going to be one of the people that kills 40,000 people in the country? Should the gun dealer that sells the gun know that the person that buys the gun is going to be the person that goes and commits one of the similar, I think, number of 40,000 or so, 50,000 gun deaths a year? Are you saying that the person who's selling it is supposed to just know that intuitively? So, Your Honor, I think that this gets back to the speculativeness of this enterprise and the fact that PLCA preempts actions. If we brought an action that said, you, gun manufacturer, make guns, and this person died, therefore you should pay, I think it's very easy to say that that case with nothing else is preempted under PLCA, but we haven't brought anything like that and our law doesn't do that. So, it's entirely a sort of figment of NSSF's imagination that we're trying to do a redux of these types of suits that PLCA obviously shut the door on. I also do just want to say one thing because we haven't talked very much about the text. We know what Congress is preempting because Congress wrote the words. That's how we know the scope of our laws. It's written in the words. They wrote statutes applicable to the sale and marketing of firearms. Our statute is applicable to the sale or marketing of firearms. To the extent we allege an action or obviously any actions we allege have to be knowing in the same way that PLCA requires knowing, they have to satisfy proximate cause in the way that PLCA requires proximate cause. All of those fights could be had on a case-by-case basis. We're not expecting them to agree that in any action it would automatically be satisfied, but in this kind of pre-enforcement facial or semi-facial posture, there's just nothing in the text of what Congress wrote that suggests that our law is not applicable to the sale or manufacturing of firearms. It plainly is on any definition of the words Congress wrote and I haven't heard my friends on the other side. I mean, if you look at the Ninth Circuit opinion, that all depends on whether you take the broad reading of applicable or the narrow reading of applicable, isn't it? Your Honor, I see my time's about to expire. Can I answer the question? Sure. So I think that the broad and narrow reading question is an important one that courts have divided on, but that is about whether generally applicable laws that cover everybody count as laws that apply expressly and specifically to the firearm industry. So if the school has a rule that says only people... I get your point. You're saying this is clearly not a law of general applicability. This is a law that's trained on the firearms industry. That's why we're here. We followed, actually, the narrowest path, right? And we follow that line, actually, our viz. Anything else? Thanks. All right. We'll hear you on rebuttal. Thank you, Mr. Zuckerman. Ms. Murphy? Good morning, Your Honors, and may it please the Court. Erin Murphy on behalf of NSSF. Congress enacted the Protection in Lawful Commerce and Arms Act to put a stop to lawsuits that invite judges and juries to deploy novel expansions of the common law to hold firearms industry members liable for harms caused by the unlawful misuse of firearms that they lawfully manufactured or sold. That is exactly what this New Jersey statute does. A. 1765 subjects firearms industry members to liability for gun violence perpetrated by independent third parties over whom they have no control whatsoever if a judge or jury concludes that their manufacturing, marketing, or sales practices were insufficiently reasonable. And lest there be any doubt, the statute says right on its face that compliance with all of the myriad federal, state, and local laws that govern the manufacture and sale of firearms is not enough to save an industry member from a finding that its conduct or controls are nevertheless so unreasonable as to constitute a public nuisance subjecting it to damages, abatement, injunctive relief, and more. As the District Court correctly concluded, the PLCA's predicate exception cannot be read so expansively as to cover a state statute that simply invites the very kind of litigation that Congress enacted the statute to foreclose. The predicate exception is designed to save litigation premised on a violation of state or federal law, not litigation premised on a statute that explicitly disclaims any requirement that the industry member engaged in conduct that is, quote, unlawful in itself. Now, of course, I'd like to talk about the merits in more detail here, but certainly I will start by talking a bit about jurisdiction and some of these threshold issues. This is not a case like Sherwin-Williams that involves a declaratory judgment action where parties are coming in trying to preempt what is essentially equivalent to a private party lawsuit. This is a pre-enforcement challenge to a statute. And the Supreme Court and this court have articulated a text for pre-enforcement challenges to statutes, and it's not as demanding as the test that you have in other contexts because we start with the assumption that states are going to generally enforce the statutes that they enact. So all you need to do under Susan B. Anthony and cases like New Jersey Bankers Association is have conduct that you want to engage in that is arguably protected by the Constitution, arguably prescribed by the statute, and a credible threat of prosecution. This is not a case in which, I mean, the parties agree there are a whole bunch of lawful parts of the statute here. You don't take issue with most of the parts of the injunction that we put on hold. There's one part you disagree with the wording. So we've got a more specific question of will they enforce this, some of the parts or in some of the ways. Will they enforce it in a way that doesn't respect proximate cause, that involves the reasonableness going beyond the unlawful provisions, which I don't think you would dispute that the unlawful itself would be fine. So it's a little different from the general, well, we expect they're going to enforce this law some way, somehow. Sure, but I don't think it's really that different because we have a long history of seeing what kinds of lawsuits are brought pursuant to these kinds of theories. And even these kinds of statutes because this model, this law is modeled after a New York statute that was recently passed. And we've seen a lawsuit brought under that statute by the city of Buffalo. So we have different people who are in charge of who to prosecute under the statute, right? Different jurisdictions, different administrations, right? So just because one statute in New York was enforced in a certain way, why should we extrapolate that the same rule apply here? I think because, I mean, as the legislature said right in the preamble of this statute, the point of it is to reinstate the kind of lawsuits that are not permissible pursuant to things like this court's decision in Camden County and the city of Philadelphia and the PLCAA. If they do that, the case would be summarily dismissed by the district court, right? I mean, clearly, you don't deny, do you, that under PLACA's plain language, they could bring actions against people covered by the statute who are engaged in straw purchases, right? We don't deny that if they're knowingly engaged in straw purchases, other violations of the law. If they're knowingly lying about their record-keeping requirements, the state could do that as well. Essentially, the way I think about it is if the predicate statute is something other than A1765, if it's predicated on a violation of some other statute and this is just the cause of action, you know, those are, as long as we satisfy the knowing and approximate cause requirements, you're not going to run into problems. What we're worried about are the lawsuits that are predicated on nothing other than an alleged violation of this statute that look like the lawsuit the city of Buffalo just brought, which is brought against- If it's predicated only under this statute, but it complains about straw purchases or fraudulent record-keeping. Fraudulent record-keeping is going to be, I mean, I think that what you'd need to have is the reason Congress identified that as a permissible thing under the predicate exception is because it's illegal. It's already illegal to engage in fraudulent record-keeping. Right, but this statute, that issue in this case, does empower New Jersey. I know it's duplicative of PLACA, but it does empower New Jersey to sort of enforce PLACA through this New Jersey statute. I mean, it's essentially creating a cause of action. I mean, you can think about the statute as, in one sense, creating a cause of action, and if it's a cause of action that's predicated on a violation of something else, then we don't, setting aside for a moment knowing violations and proximate cause, then we don't have the principal concern we have here. Our principal concern here is seeing lawsuits that look just like Hamden County, just like the city of Philadelphia. Right, and what I'm suggesting is if that happens, that's an easy case. The district court dismisses it forthwith and you move on. I guess what I'm struggling with is it appears that this New Jersey statute has parts of it that are clearly okay, consistent with PLACA, and parts of it that seem to be directly contrary to PLACA, all of which I think might bring us back to standing, which is, you know, why isn't all this premature? Why shouldn't we wait and see what the case looks like before we make a decision about whether the New Jersey attorney general is acting consistent with PLACA or is preempted by PLACA? Because what PLACA, sorry, I think of it as the PLCA, I got used to PLACA here, what the statute does, it forecloses the bringing of these lawsuits. It's not just a defense. These lawsuits, when you say that phrase, that puts the rabbit in the hat. I don't know what these lawsuits are until I see them. Sure, but to start with just how the PLCA works, the operative text of it says that the lawsuits that cannot be brought pursuant to the PLCAA may not be brought. You may not bring them. It's not a defense. It's not if they're brought, we can raise this, that, or the other. They may not be brought. So if we are right that the attorney general plans to bring these kinds of lawsuits, the attorney general plans to violate federal law. And when a state actor plans to violate federal law. Yeah, but that might get you in trouble with what we wrote in Sherwin-Williams, because I remember the verbiage from the opinion, those counties might sue for lead paint and they might not. As you just said, if the attorney general does something, but we don't know what the attorney general is going to do, and the attorney general has done nothing as far as we can tell. Sure, but the critical difference between this case and Sherwin-Williams is that was not a pre-enforcement challenge to a statute. The court never even mentioned Susan B. Anthony. It wasn't the test that governed. That's the test that governs here, and as this court just said, New Jersey Bankers Association, All it takes to have a credible threat is that it's not merely imaginary or wholly speculative. And I don't really see how you could say that what we're worried about here is imaginary or wholly speculative when the very first state to pass one of these statutes has already had that statute used. It's clearly not imaginative, but it's also possible that there are two or three gun dealers in New Jersey. This was interesting to read in the amicus briefs. It reminded me of some of the pill mills with the opioid problem. There are apparently some dealers out there who are known to sell guns to people who are prohibited persons under the law at this moment. So if the thing that the attorney general does is go after the straw purchase problem or the fraudulent record-keeping problem, then even you've conceded, you have to concede, that that's perfectly appropriate under the federal law. It's true, but I think that's all a question of the scope of the relief, not a question of standing. If the attorney general has the intention to bring both preempted suits and non-preempted suits, that doesn't mean we get no relief and we have no standing or we have no cause of action or any of that. It just means this court should appropriately tailor the relief in this case to only apply to the lawsuits that are foreclosed by the PLCAA, which is all we've ever asked for. So one of the things – well, first of all, two questions for you. First, credible threat. One of the other terms that's used in these cases is certainly impending. A lawsuit is certainly impending. Is there any daylight between those two, and if so, can you satisfy certainly impending? Sure. As I understand the Supreme Court's precedent and this court's precedent in the context of pre-enforcement challenges, the credible threat is essentially the kind of not wholly imaginative or speculative is a gloss on certainly impending. It's essentially the standard is a little lower in the pre-enforcement context because we generally presume that states intend to enforce their statutes. And here, of course, the state has made abundantly clear, you know, running here asking for an emergency stay, that it intends to enforce the statute. To be fair, though, I mean, you – I think there's been some acknowledgement here that the statute does encompass prosecutions that are lawful under PLCAA, allowed under PLCAA, and that, you know, to the extent that they were not – the initial injunction prevented that, then, you know, that would explain the emergency, right? But the state didn't limit its request. If the state had just come here and said all we're looking for is relief to narrow the scope of this injunction so we can go after things that we think aren't a problem, you know, then at least this argument would be harder for us to make. But that's not what they did. They said we need to be able to sue your members during the duration of this hearing. Your members if they violate PLCAA in ways that – right, you know, if they were – you know, hypothetically, if one of your members were to engage in knowing sales to straw purchase. With respect, they wanted the entire injunction gone, not just the parts of it that didn't involve – So moving on, though, because the agency that the AG set up, the office that they set up, is empowered to enforce the statute in ways that are consistent with PLCAA, then doesn't that – the creation of the office kind of fall out as a reason supporting your credible threat of enforcement? I don't think that's really a fair position to put plaintiffs in pre-enforcement challenges in. I mean, they have a statute that by its terms allows them to come after my clients for just doing what they do right now. They can come after my clients on theories, and we've seen this in all sorts of litigation before and more recently. They come after companies for things like you market your firearms by talking about the capacity and concealability of them, which of course are things that law-abiding citizens want to know, but they say it's unreasonable because a criminal would find that attractive. Who's they in that sentence? The city of Buffalo, those were allegations that were made by Camden County, city of Philadelphia. Sure, the state hasn't brought a lawsuit yet, but I mean that's putting us in a position of them trying to kind of preclude our ability to stop them from bringing a lawsuit that violates federal law by sitting on their hands until our litigation is over. But when we talk about a credible threat of a suit or a certainly impending lawsuit, we're talking about specific parties, right? So there are certain cases where that prosecutor's office brought cases in the past against the plaintiffs, right? And so we don't have anything here. We don't have a history, as far as I know – correct me if I'm wrong, please – of the New Jersey Attorney General's office bringing – well, we know under the statute there have been no prosecutions, right? Sure, but that's true by and large when you bring a pre-enforcement challenge, and of course, yes, we didn't bring it like the day this statute went into office, but as the Attorney General's attorney just represented to this court, it takes a little bit of time for them to put together lawsuits. So the reason there's no record of history of prosecution of this is because it hasn't been in place very long and it's been enjoined in significant part for most of the time that it's been in place. There have also been examples in other cases where the prosecutor has said, to enforce this against certain people in certain ways, and we don't have that here either. What we conversely do not have is any representation, which we would gladly take if Mr. Zuckerman wants to get up here and rebuttal and say, you know, it's not just that you guys are speculating. We assure this court we have no intention of ever bringing a Buffalo-style lawsuit against every manufacturer in the country on the theory that just engaging in their everyday business is a violation of this statute. You know, that's crazy. That's not something the Attorney General would ever do. We're happy to enter into a consent decree that says we won't bring that kind of lawsuit. You know, we can all go home happy. So you would want them to say we will not sue your members for engaging in lawful, you know, commerce or marketing or sales in perfectly lawful ways. I mean, that wouldn't assure you of anything. Well, I think it would be an acknowledgment that they won't enforce the part of the statute that says they can sue us for practices that are not unlawful in and of themselves, but instead simply, quote, unquote, unreasonable under all the circumstances. That's where the concern comes from here is that they're going to sue my clients and say, yeah, you're following every law imaginable, but it's unreasonable for you to do everyday things like market your products to law-abiding citizens. That is the kind of liability that has consistently been brought in these public nuisance cases. It's the kind of liability they're talking about in the preamble to this law when they say that the PLCAA and decisions from courts like this court have gotten in their way of trying to hold manufacturers liable, and that's what the state has never yet said. Of course we're not going to do that because, of course, they are. That's why these laws are being passed to reassure them. Is it your opinion that there is no application of that unreasonable standard that would be lawful? I think to the extent that, I mean, because it is juxtaposed with, you know, conduct that's not unlawful in and of itself, I think once you're talking about conduct that's not unlawful in itself, that is not something that qualifies as a predicate statute for purposes of the PLCAA. As I understand the predicate statute exception, a predicate statute needs to be something that has a violation of the law. And here what you have is a law that essentially creates a cause of action to bring lawsuits when there has been no violation of the law. It says that on its face. The goal is to create a cause of action either when there is conduct that is unlawful or when there is conduct that is unreasonable under all the circumstances. How does your theory of standing fit with the merits of the preemption claim? I want to set aside the vagueness of the due process claim now. Is it that anything that is unlawful in and of itself is consistent with PLCAA? And is it anything that goes beyond that is preempted by PLCAA? I think for purposes of the predicate exception, the way I think about it is if the state is relying on the predicate exception, this statute, A1765, can't itself be the predicate statute. Okay. If it's a different statute, then there's no preemption. Different statute, different exception. If they're not relying on the predicate exception, as this Court kind of recognized in your injunction, if they're relying on some other exception or if they are saying we're using this as a cause of action grounded on the violation of some other statute. Now, of course, you still have the issue of knowingly and proximate cause, but to me that's kind of the easiest way to understand and articulate what we see as the problem. This statute can't itself be a predicate statute because this statute doesn't require a violation of state or federal law. It essentially just creates a cause of action to sue regardless of whether there's been a violation of state or federal law. And in that respect, I think it works a pretty clear end run around the PLCA. It sounds like a blanket preemption argument because I assume that if New Jersey created a statute that put in place a bunch of record-keeping requirements for firearms dealers, you would say, well, the field has been preempted, the federal firearms law. No, no, no, not at all. Not at all. I mean, if they came about this differently and instead of passing a statute that said, you know, reasonable controls, and if you don't have them, you can be held liable without even regard to, it seems, knowledge or approximate cause, and instead they passed a statute that said, you must have reasonable controls and here's what they are. We're going to list the ten things that constitute reasonable control. So the reasonable control includes something like, you know, when a young person shows up to buy a gun and says that she wants to buy it for her boyfriend and then the dealer asks a few questions and the young lady has no idea about firearms, then they can create a scheme. I mean, that's sort of, in my experience, that's the most common straw purchaser problem, right? You've got gang members who send their girlfriends or their cousins or their friends to go buy guns for them, right? It happens all the time. Yeah. If they want to pass laws that say, here's what you must do during a transaction. You must ask this question. You must record this piece of information. We're not suggesting that the PLCAA precludes the ability of states to do that. Our concern is that this statute doesn't do that. It doesn't say what the reasonable controls are. It really just creates a cause of action. Your argument is they're not trying to regulate the proper lawful commerce in firearms. They're just creating a statute that's a public nuisance statute, just like the common law public nuisance cases that were the impetus for the federal law. Correct. And I think the Ninth Circuit's letter of opinion is really pretty helpful on this. What they talk about in determining that you couldn't apply just a generic public nuisance statute isn't a predicate statute is the idea that what Congress was targeting in the PLCAA was really regulation via judicial evolution and decree. What Congress wanted was to say we don't want the firearms industry nationwide to be regulated by some decree from one judge sitting in upstate New York. I'm not sure how that helps you, though, because here it's not a court. It's a legislature. And what about federalism? I think the problem is what Congress didn't want is for the regulation itself to come from judges and juries. It wants the legislature to tell the industry what it's supposed to do. And that's what the industry – All right, so that gets back to what you said before. You don't have a problem with New Jersey legislating, but the legislature has to say something that your clients know what the law is and how to follow it rather than just passing a law that's the equivalent of a common law nuisance statute. Exactly. It's not enough to say, you know, if you aren't reasonable, you can be held liable. They need to say here's what it is to be reasonable. Here's the things you must do or not do. And if they do that, then they have a statute. They have a state statute that regulates the marketers and sale of firearms. And if somebody knowingly violates it in a way that proximately causes injury, great, you're in predicate exception world. The problem with these types of statutes is they're essentially delegating the task of regulating the industry to the judges and juries by saying we'll just say reasonable and you judges and juries can decide after the fact what was or wasn't reasonable. And that's what puts my clients in the terrible position of constantly facing a risk of liability for doing nothing more than engaging in the lawful commerce of arms. Can I ask you about cause of action here? Absolutely. You're not arguing that CLACA itself creates one. Your argument is that this is bias section 1983. But it's not phrased the way that rights-creating laws are. This is not a Title VI or a Title IX or something like that. It's phrased in the passive voice. So why should we read it as creating a right of your clients, of these gun dealers and others, to be able to bring a suit as opposed to waiting until a suit is brought and then raising it as a defense or an immunity at that point? Sure. I think the statute just easily satisfies the text that's been articulated in the 1983 context. First, there's no question who's identifying who this statute's supposed to benefit. That's the first prong. And I don't think anyone would dispute that this statute was written to benefit my clients. I don't know if your friends on the other side would dispute that. I mean, I don't understand what the statute would be doing if it's not designed to protect industry members from litigation. There is one reference in the preamble to CLACA about the marketing, right, that the people who want to market these things are, you know, what is it that you think makes this clear that this is not fundamentally about the rights of gun owners, gun buyers, et cetera, that's about gun sellers? The fact that the operative text of this prohibits, The operative text here is the second piece that says a qualified civil liability action shall not be brought. The only people against whom a qualified civil liability action can be brought are firearms industry members. So the only people, the only entities protected by this statute are firearms industry members, are federally licensed manufacturers and sellers. This is a statute that's sole purpose is to protect them against litigation, and the statute unambiguously says that the litigation it protects them against includes litigation brought by the state. So the three-factor test of, you know, do we know who we're benefiting? Yes. Is this vague and amorphous? No. Even the state agrees it can be applied in the defensive context, so there's nothing, you know, incapable of judicial application about the command that civil actions shall not be brought, and it unambiguously applies to the state. Where's the clear statement? The clear statement is, it's the question in the clear statement. I'm looking at the law. Yeah, I mean the question, I just want to be clear. The clear statement question is, is it clear who it benefits? And it's clear because the civil liability action that can't be brought can only be brought against us. So, you know, I don't. I would point to 79035A. The term qualified civil liability action means the civil action proceeding or an administrative proceeding brought by any person against a manufacturer or seller for damages or other relief. It's very strangely phrased for a clear statement creating a right of a manufacturer. Well, I actually think that, I mean, the statement to me comes from the operative text, which is 7902, that says a civil qualified liability action may not be brought. And the only person it can be brought against is us. And again, it's very odd that 7902A, which you're rolling as the operative provision, doesn't mention sellers at all. It's a bit of an oddly worded statute because you have to read, you know, because like the definition of what you can't do comes from the definitional provision. I think it would say no, you know, firearms manufacturer, person, whatever, shall, you know, face a qualified civil liability action in state or federal court. I just don't know how there's any difference between those two statements because either way what you can't do is bring the lawsuit. They show the passive voice. But, you know, at the end of the day they mean exactly the same thing. And what it means is if a state brings a qualified civil liability action against an FFL, which is the only one you can bring it against anyway, they're violating federal law. That's a violation of federal law. The bringing of the act is itself a violation of 7902, which says you can't bring the act. And when you have that, that's just a very straightforward 1983 suit. It's the state. But where is the right? The right is a right to not have the action brought against us. We're the only people it can be brought against. That sounds to me like the definition of a defense. I think a defense is something that says if a civil liability action is brought, it shall be a defense that you X, Y, and Z. This says you can't bring it. It doesn't say, you know, here are the rights of a firearms, a federally licensed manufacturer or dealer in the event a lawsuit is brought. It says you just can't bring one, period. And then when you have a statute that says that, I don't see how it's different from a statute that says you can't discriminate against. But when it's saying you cannot bring one, they're saying you, Attorney General, cannot bring one. They're not saying you NSSS members have the right to be free from a lawsuit, and you can enforce that there under 1983. Sure, but if you take a look at virtually all of the civil rights statutes that are enforceable under 1983, they don't say an individual has a right not to be discriminated against. They say no one can discriminate against an individual. They operate as prohibitions on somebody, and the clear beneficiary is the person who can't be discriminated against. Here, too, it operates as a prohibition, and the clear beneficiary are my clients. Okay, well, what about the language that says that there should be no public or private contact? I wanted to address that and just make two other brief comments about the cause of action. On that, for one, we're not saying that the PLCAA is our cause of action. We've never claimed that. For another, when you look at that, that language comes in a rule of construction that begins by talking about how to interpret the exceptions to the PLCAA. So I think it's pretty clear in context that what Congress included that rule of construction for is to make clear that it didn't, by virtue of identifying exceptions to the PLCAA, mean to create causes of action for people to sue industry members. You still need to have a state cause of action in order to bring a negligence per se claim or a breach of contract claim or whatever it is that's under the exceptions. They're saying the PLCAA is identifying which state lawsuits can go forward, but the PLCAA itself is not the cause of action. You still need state law to go bring a cause of action, particularly given that half of the rule of construction is specifically talking about how to interpret the exceptions. That seems like a much more natural understanding of what Congress was doing than thinking about whether there would be any seemingly what one would have thought was unlikely event that a state passed a statute inviting the kind of lawsuits the PLCAA presents, whether an industry member should be able to come forward and stop the state from filing federal law. The PLCAA, which has just discussed how states were improperly enforcing nuisance statutes against industry members, then needs an additional clause to say states shall not sue industry members under the PLCAA. Is that what you're saying? Yes, that the PLCAA itself doesn't create the cause of action for states. And let's not forget there's private parties here too. And so all Congress is doing is making clear that, you know, just because it articulated negligence per se is actually a really good example because several states don't recognize the doctrine of negligence per se. And what Congress is making clear is that just because Congress said negligence per se is an exception, that doesn't mean that private parties can now bring, quote, PLCAA lawsuits claiming negligence per se in states where negligence per se is not an available cause of action. If I can just say two very, very quick things about – I see my time's running out, but it looks like you have a question. I do want to ask – were you going to ask about the preemption merits? Because I wanted to ask you about your theory of that. I'm happy to do that. If I can make just two very quick observations about cause of action. I just, one, do want to put out there that the state conceivably did not raise this argument below. And it would also be a little unusual to address it in the context of this particular appeal since this appeal is solely about injunctive relief, and we don't need 1983 to get injunctive relief. I know it's not an issue that's been briefed here, but you don't – it's, you know, the Supreme Court said in Armstrong v. Exceptional Childcare, you don't need 1983 when all you're asking is to enjoin violations of state law. So it seems better served, you know, if the court wants to resolve this question, I'd wait until we have some relief that you actually need 1983 to get and address it in the context of that kind of final judgment appeal. Okay. So what's your theory of preemption? If we get past standing and we get past cause of action, we say you can come into court. You are not arguing field preemption. You are not arguing conflict preemption of the impossibility variety. So the district courts seem to rely on obstacle preemption, but are you arguing that? Are you arguing express preemption? We're speaking express preemption. We're just saying the statute by its terms precludes qualified civil liability actions, and we maintain that the actions that we are worried about, the ones that we're here suing about, are qualified civil liability actions. The predicate exception is part of the definition. We don't know. We don't know what these actions are. But we do know what the actions are that we want this court to foreclose. Right. And that sounds like you're seeking an advisory opinion. It sounds like the opinion you want us to write is that the New Jersey Attorney General can't bring any case against your clients unless the case falls into one of the six exceptions, the carve-outs to the federal law. That's what you want us to say. Because you can see that those six carve-outs, New Jersey has full power to pursue cases as long as they're consistent with those six carve-outs. The one carve-out we've been focused on is the predicate exception. What we'd like you to do is interpret the predicate exception, simply interpret it as a matter of law in a manner that would – what we've said, what we've come forward, our basis for standing, and what we are asking the court and what we're worried about is that they're going to bring lawsuits against us based on the conduct we're engaged in right now. They have never suggested that they're not going to bring those lawsuits. They've just said we haven't done it yet. And we've seen all sorts of those lawsuits brought. Right, and what I'm struggling with is if they bring that case and that case falls squarely within the predicate exception, you don't go to court because you have no case. And the contrary is also true. The converse is true. If they bring a case that's not squarely within one of the six exceptions, then you're going to get it thrown out forthwith. Or at least you should if the district judge is doing his or her job. But there's no reason we should have to as long as we have standing in a cause of action to come in and say, you know, you're about to bring a lawsuit that bringing it would violate the PLCAA. There's nothing – that's a traditional pre-enforcement challenge. We don't – there's nothing wrong in a pre-enforcement challenge with coming in and saying, look, there's applications of a statute that are okay, but we're worried about this one. We're worried about this one, and this is the one that implicates our conduct. This is the one that you have never told us you're not going to bring and that, in fact, has been brought all over the country. And we just want this court to say that type of lawsuit is not a lawsuit they can bring. Because I'm trying to imagine what the opinion we write looks like. And it looks like we write an opinion that winds up being either just restating the language for the federal statute, which does nothing, or an advisory opinion reaching out to imagine a whole bunch of different things that could be argued without the benefit of concrete fact in the case of controversy. I don't think it's actually that complicated because really there's a very concrete dispute here between the parties. They think this statute qualifies as a predicate statute, and we don't. That's really the principle. There's obviously – we also disagree about the meaning of the term knowingly, and we disagree about the meaning of the term proximate cause. But they think they can bring any – they think they can bring the statute. Does the federal law preclude the statute or the action? I thought it precludes the qualified civil action. It doesn't say you can't write a statute that's over broad. Sure, but we're not asking the court to enjoin, like, the statute in the abstract. We want to enjoin the state from bringing the action. What action? The action that is the action that is predicated on the violation of nothing other than this statute. It's not predicated on a violation of some other law. What if the action they bring next week is predicated on one of the six carve-outs in the federal law? Then that wouldn't be covered by the release that we saw in this case. You know, we don't have a problem with – That seems to get back to what Judge Beavis just said, which means that we would have to write an opinion just restating what the six exceptions are. I don't – I think that that's really kind of overlooks the actual dispute between the parties because if all you did was say that, they'd say, great, we have a predicate statute, and we'd say, no, you don't. So what we need the court to say is, you're wrong to think that this is a predicate statute. You cannot bring a lawsuit that is premised on nothing other than a violation of this statute. You can bring other lawsuits, that's fine, but you can't bring subject to knowingly and proximate cause in the debate about that. But, you know, I don't see how the fact that there are some lawsuits that aren't subject to preemption here that we don't claim shouldn't go forward is a reason we shouldn't get relief on the ones that should not go forward. If they're going to bring them, they shouldn't be able to bring them. That's just a classic as-applied challenge in a pre-enforcement context. They want to bring lawsuits that we maintain they can't, and there's nothing wrong with this court saying, you can't bring those lawsuits. You may be able to bring other ones, but you can't bring them. If they brought ones that were plainly preempted and just bad faith trying to wear you down with litigation expenses, could you get Rule 11 sanctions for that? I mean, we certainly could think about trying, but I just do want to note that the idea that all of this is some fanciful hypothetical is just really hard for my clients to summit when my clients have already been sued under the identical statute up in New York on the same PLCAA theory. And you said that was the city of Buffalo? The city of Buffalo. And they don't have sovereign immunity, so you could... They don't have sovereign immunity. That lawsuit's been stayed because there's a challenge to New York's law pending in the Second Circuit still right now on the same grounds as here. But, you know, the whole point of the PLCAA I do think it's important not to lose sight of. Congress didn't want the lawsuits brought because you get one judge, and I mean... Congress didn't want the wrong lawsuits brought, but it opened the door for the right lawsuits to be brought. That's what the six exceptions are all about. Sure, but what they're worried about is the wrong lawsuits being brought, and, you know, of course they're going to be brought in state court. I mean, the Buffalo is one great example. It says right in the paper, you know, we intentionally brought in New York clients, New York defendants to try to preclude removal, you know, try and stay in state court, and if the state gets lucky with one state court judge, my clients are stuck litigating a sprawling public nuisance case for years on end before they may get any appellate review, let alone appellate review in a federal court, regardless of whether that lawsuit was foreclosed by the PLCAA. That's exactly what Congress was worried about when it said it's not just the prospect of liability, it's the litigation itself that has the potential to drive this industry out of business, interfering with commerce, interfering with constitutional rights. That's what we don't want, and in that context it seems 100% in keeping with the PLCAA for industry members to be able to come in at the front end and stop the litigation from happening in the first place. I say I've gone way over my time, so unless there's any further questions. Thank you, Ms. Murphy. We'll hear the rebuttal from Mr. Zuckerman. Thank you, Judge Harder. Your Honors, if I could just make sort of four points in response. I first just want to start with the fact that you didn't hear, while my friend on the other side was up here, anything about any intended conduct that they actually want to engage in. They themselves cite Susan B. Anthony List, but they don't point to anything that would satisfy the Susan B. Anthony List test, in marked contrast to the fact of that actual case. You did hear in response to Judge Freeman's question appeals to a sort of inchoate they that people might at some point in the future bring actions that would, as Judge Harderman, you pointed out, get dismissed forthwith because they clearly run into the teeth of PLCAA. That itself obviously. Well, what about the theory that they're not going to get dismissed forthwith because they're not going to be filed in federal court, they're going to be filed in a state court that really doesn't care about following the federal law and just cares more about the policy that's being pursued by the New Jersey Attorney General? Let me make two points in response to that, Judge Harderman. First, obviously, under Claflin, Taflin, all of these cases, we presume equal competence in the state and federal courts. I don't think we can base a decision on some sort of presumption of irregularity in state courts, but I also think it's important to note that they talked about Buffalo, they talked about other cities bringing actions. Our statute, a New York statute, does have a citizen private attorney general provision. New Jersey statute, the statute they're challenging, is exclusive enforcement by our office, the office of the New Jersey Attorney General. So their presumption is not just that some cases are going to get brought, it's that our office is going to bring cases that we have never said we're going to bring. You already heard me stand up here before you acknowledge that these kinds of theories that were brought in candid in these other cases, our whole point is that those are the kinds of theories that were foreclosed by Flocka. If it's true that NSSF's fears are unwarranted, then you'd be fine with us writing an opinion that says that this New Jersey law is invalid except to the extent it permits the New Jersey Attorney General to bring one of the six types of carve-outs that are in the federal law. Are you comfortable with that opinion or do you want something different? I think there are two problems with that. First is that I don't think the framers of Article III are comfortable with that because that is truly an advisory opinion just telling New Jersey to follow Flocka. We already agree we have to follow Flocka if we sue an entity that is protected by Flocka and seek relief that is encompassed by Flocka's operative provisions. So that just, I think it gets back to what Judge Beebe said, that is just an opinion that says follow, it just copies and pastes Flocka and it becomes a follow the law injunction. But if we conclude that the New Jersey statute is overbroad and preempted in part, why wouldn't we write an opinion explaining that and then in the course of explaining that it's preempted in part, not entirely, but in part, just sort of shaving it down to size because it does seem, it seems really broad and really vague. And it has parts like the proximate causation standard that appear to just take issue with the federal standard. So, Your Honors, I think this gets back to two things. One is that the statute, Flocka the statute, does not preempt other statute, it preempts actions. And so we could use our statute to go against, for example, an unregistered ghost gun seller. That's actually the first action the New York Attorney General brought using their law. That's an entity that can't even bring a Flocka defense. So whatever theory of proximate cause, whatever mens reis I enter, it's just not in that case because there's no Flocka claim. So states have to be able to write laws that go below the Flocka floor because they have to be able to enforce those laws against entities that have no right to claim Flocka in any way, even if they are sued. For example, the ghost gun seller who just isn't a Flocka protected entity in the first place. I also do just want to say a word about this unreasonableness provision, the idea that there might be some, that there's some way to write a law that, that I guess sort of measures out in coffee spoons what all things would have to happen to be lawful. I think if you look at the decision, we cite a case from the New Jersey courts in Ray Sarko. It's an unpublished case, but it just details what happened in a New Jersey FFL. Before Section 5835 was passed, the really only things we could do in that kind of fact pattern were either try to revoke their license altogether or try to, I guess, prosecute someone criminally. It was basically that or nothing. This actually gives us more tailored remedies, and if you look at the facts in that case, I can't warrant that there was nothing unlawful in that case, but I think you'd also have to say that you could easily imagine facts that maybe they comport with the law, the written law in some sense, but they're also clearly unreasonable and should lead to some sort of civil tort, you know, injunctive relief abatement. For example, an entity that does have a secured room for its firearms, but they have 47 passes and everybody gets a pass and they don't really monitor who goes in and out of the room. Maybe that checks the boxes on the law, but it certainly seems unreasonable, and if New Jersey wanted to take action to shut that kind of thing down, I don't see how FLACA would have any problem with that. I just want to get back very quickly. I'm sorry, I realize I'm over my time. To Judge Bebas's question about the cause of action, I think the passive voice is telling, as is the express disclaimer in 7905C, the test that they articulate, they skip a step. They give you the first three. They skip the final step, which is then where Congress actually expressly or impliedly forecloses a remedy. Here it expressly foreclosed a remedy. That test comes out in all these cases where it's just not clear either way, and so there's this debate about whether or not there's an implied Section 1983 remedy. Here you've actually got text. I don't think any of those cases would have gone to the Supreme Court if there had actually been text by Congress saying there's no such right. And I will just add that the words they wrote are no provision of this chapter shall give rise to a private cause of action, not of this section. Had they written of this section, had they not put it in an independent clause, I think my friend on the other side's argument might make more sense, but the words they wrote are, in fact, broad. I also do just want to note they brought up Armstrong. I don't see how Armstrong helps them at all. We have a footnote, footnote 2, on page 20 of our opening brief that actually addresses this and cites an opinion by Chief Judge Sutton, Michigan Corrections, and the Sixth Circuit that goes into exactly this point. There's no freestanding equity cause of action that they have where Congress foreclosed a Section 1983 remedy. With that, Your Honors, I just would add at the last, I don't think you heard them articulate any textual hook for why their theory of preemption actually fits with the words Congress wrote, which were applicable to the Taylor Marketing Firearms. For all of those reasons, we would ask you to reverse the judgment below. Thank you very much, Mr. Zuckerman. We thank counsel for the briefing and the argument. Court will take the matter under advisement.